## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DUSTIN S.,[1]                                  )
                                               )
                          Plaintiff,           )
                                               )          CIVIL ACTION
v.                                             )
                                               )          No. 22-1151-JWL
KILOLO KIJAKAZI,                               )
Acting Commissioner of Social Security,        )
                                               )
                          Defendant.           )
_____       )


## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i)

and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).

Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS

that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

AFFIRMING the Commissioner's final decision.

I.      Background

Plaintiff protectively filed an application for SSDI benefits on December 31, 2019.

(R. 10, 196).  After exhausting administrative remedies before the Social Security

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed to resolve a conflict between the vocational expert's (VE) testimony that an individual with only rudimentary literacy (defined as the ability to read warning and danger signs or cash register buttons) is able to perform three representative jobs and the Dictionary of Occupational Titles (DOT) which provides that all three of the jobs require Level 1 Reading.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's, even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff points out the ALJ found Plaintiff "may not work in environments requiring more than rudimentary literacy (e.g. the ability to read warning and danger signs or cash register buttons)."  (Pl. Br. 7) (quoting the ALJ's RFC assessment, R. 18).  He then argues all three representative jobs testified by the VE and relied upon by the ALJ require level 1 reading, identified in the DOT as "Recognize meaning of 2,500 (two- or three-syllable) words.  Read at a rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers."  Id. at 9 (quoting the DOT listing for Polisher, Eyeglass Frames, 1991 WL 679267).

Plaintiff argues, "The plain language of this reading level and the reading limitations in the RFC conflict, and the ALJ erred in failing to recognize, address, and resolve this conflict." (Pl. Br. 9). Plaintiff acknowledges the ALJ asked the VE if his testimony was consistent with the DOT and the SCO (Selected Characteristics of Occupations) and quotes the VE's response that his testimony was consistent:

> however, those two do not set forth information in reference to shifting positions, absenteeism, being on- or off-task or breaks. That is additional information not set forth in those two documents and that I know from my over 32 years of work experience.

Id. at 10. Plaintiff then argues, "The ALJ never recognized, addressed, or resolved the inconsistency between the RFC and the vocational expert's testimony at the hearing." Id. He acknowledges the ALJ found "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Id. (quoting R. 24). He then argues, "But such boilerplate language is insufficient to satisfy the ALJ's duty to resolve apparent conflicts between the RFC and the DOT." Id. at 10-11 (Citing, POMS DI 25015.017(H)

Plaintiff concludes, "There exists an apparent conflict between the RFC and the DOT regarding literacy levels, but the ALJ failed to address this conflict both at the hearing and in the decision. Therefore, remand is required for the ALJ to adhere to the requirements of SSR 00-4p." Id. 11.

The Commissioner responds, "Plaintiff has not actually identified any conflict that required resolution." (Comm'r Br. 1). She argues RFC assessment and DOT reading levels describe different things, RFC is the most an individual can do in the workplace

5

but "DOT reading levels describe the general nature of education needed for jobs, based on school curricula nationwide."  (Comm'r Br. 5) (Citing 20 C.F.R. § 404.1545; DOT, App'x C, 1991 WL 688702).  She argues that reading levels do not describe the requirements of any occupations in the DOT and none of the DOT Occupations here appear to require reading tasks.  Id. (citing Calvert v. Berryhill, No. 4:16-CV-00639-GBC, 2018 WL 1470580, at *4 (N.D. Okla. Mar. 26, 2018)).

The Commissioner argues the VE heard all Plaintiff's testimony at the hearing and knew Plaintiff had graduated high school in special education classes, had worked previously at jobs that did not require much reading or writing, and lived alone and took care of his household independently.  Id. at 6. She argues that on this record it is readily apparent Plaintiff could perform jobs "which required only the most rudimentary level of reading educational development."  Therefore, she concluded, "when the vocational expert testified that Plaintiff could perform jobs at the most rudimentary reading level, he did so based on his knowledge of Plaintiff's reported difficulties reading and his knowledge that Plaintiff had graduated from high school and had successfully worked in three other jobs."  Id. 6-7.

In his Reply Brief, Plaintiff acknowledges the RFC assessed and the DOT reading level 1 describe different things and argues that is the point, they describe things that conflict and the ALJ did not resolve the conflict.  (Reply 3).  Plaintiff argues the Commissioner's suggestion the record makes it readily apparent Plaintiff can perform the representative jobs at issue is "no more than post hoc rationalization further highlighting the deficiencies of the ALJ's decision."  Id.

This issue revolves around the <u>Dictionary of Occupational Titles</u> usage of the

General Educational Development (GED) scales as a component of the definition trailer

of each Occupational Definition.  The DOT describes GED:

> General Educational Development embraces those aspects of education
> (formal and informal) which are required of the worker for satisfactory job
> performance.  This is education of a general nature which does not have a
> recognized, fairly specific occupational objective.  Ordinarily, such
> education is obtained in elementary school, high school, or college.
> However, it may be obtained from experience and self-study.
>
> The GED Scale is composed of three divisions: Reasoning Development,
> Mathematical Development, and Language Development.  The description
> of the various levels of language and mathematical development are based
> on the curricula taught in schools throughout the United States.  An
> analysis of mathematics courses in school curricula reveals distinct levels
> of progression in the primary and secondary grades and in college.  These
> levels of progression facilitated the selection and assignment of six levels
> of GED for the mathematical development scale.
>
> However, though language courses follow a similar pattern of progression
> in primary and secondary school, particularly in learning and applying the
> principles of grammar, this pattern changes at the college level.  The
> diversity of language courses offered at the college level precludes the
> establishment of distinct levels of language progression for these four
> years.  Consequently, language development is limited to five defined
> levels of GED inasmuch as levels 5 and 6 share a common definition, even
> though they are distinct levels.

(DOT, App'x C, III), available online at <u>Appendix C: Components of the Definition</u>

<u>Trailer - DOT Dictionary of Occupational Titles (occupationalinfo.org)</u> (last visited July

14, 2023.

Each Language Development Level (1-6) consists of three components, Reading,

Writing, and Speaking.  <u>Id.</u>  Thus, when Plaintiff speaks of Reading Level 1, he is

speaking of the reading component of "Language: Level 1."  <u>See</u>, <u>e.g.</u> Polisher, Eyeglass

Frames, 1991 WL 679267 (Language: Level 1 – READING: … WRITING: … SPEAKING:").  The Commissioner's attempt to explain why RFC and the GED scale address different parameters, and Language Level 1 Reading does not conflict with rudimentary literacy as defined by the ALJ may have some merit but fails because it does not rest on the record evidence or on citation to legal or vocational authority admissible in this case.

Plaintiff's claim that there is an apparent conflict requiring remand for an explanation fails for an even more basic reason.  Plaintiff has simply not demonstrated that a conflict exists.  Plaintiff argues that the plain language of the Occupational Definition of Language Level 1: – Reading, in the three representative occupations relied upon by the ALJ ("Recognize meaning of 2,500 (two- or three-syllable) words.  Read at a rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers.") apparently conflicts with the plain language of ALJ's definition of rudimentary literacy ("the ability to read warning and danger signs or cash register buttons").  However, he also acknowledges that the VE testified his testimony was consistent with the DOT and the SCO except for his testimony regarding a need to shift positions, being absent from work or taking breaks, or being on or off task.  Thus, it is clear the VE testified Plaintiff is able to perform the three representative occupations, and in doing so he implicitly testified that the Language Level 1: - Reading, Writing, and Speaking requirements of those occupations only require rudimentary literacy as defined to him by the ALJ in the hypothetical question at the hearing.

8

Plaintiff's argument that the ALJ needed to make further findings about consistency misses the ALJ's finding "that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (R. 24). The ALJ made that finding and providing such information is the very purpose of a VE. 20 C.F.R. § 404.1566 provides that the SSA will take administrative notice of job data in a number of publications including the DOT. It also provides, "If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist." 20 C.F.R. §404.1566(e). In 1983, the SSA issued a <u>Social Security Ruling</u> (SSR) titled <u>Titles II and XVI: Capability To Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments</u>. SSR 83-14, 1983 WL 31254. That Ruling explains that in evaluating such cases

> Use of a vocational resource may be helpful in the evaluation of what appear to be "obvious" types of cases. In more complex situations, the assistance of a vocational resource may be necessary. The publications listed in sections 404.1566 and 416.966 of the regulations will be sufficient for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful. State agencies may use personnel termed vocational consultants or specialists, or they may purchase the services of vocational evaluation workshops. Vocational experts may testify for this purpose at the hearing and Appeals Council levels.

<u>Id.</u> 1983 WL 31254, *4. Contrary to the VE's testimony and the ALJ's finding, Plaintiff's only argument is that the plain language of the DOT and the ALJ's RFC

assessment appear to conflict.  Plaintiff provides no citation to vocational authority for his assertion.

As the name implies, a vocational expert, through training and experience, is expert in vocational matters.  The record contains the vocational qualifications of the VE here (R. 302-05) and Plaintiff's counsel responded that he did not "have any questions about or objections to" the VE serving in this case.  Id. at 41-42.  Plaintiff did not raise any objection to VE testimony at the hearing and to object now requires more than his lay assertion of an apparent conflict.  Moreover, if Plaintiff's contrary argument is credited, the natural conclusion must be that there can be no work in the economy available to Plaintiff because Language Level 1 is the lowest Language Development level. However, Plaintiff's past work as a Garbage Collector Driver was Language Level 1, DICOT 905.663.010, his work as a Meter Reader was Language Level 2, DICOT 209.567-010, and as a Maintenance Worker was Language Level 3, DICOT 899.684-046, and the court sees no allegations that Plaintiff's literacy has significantly decreased since.

Because Plaintiff has shown no conflict between the RFC assessed and the DOT, there was no further conflict for the ALJ to address, Plaintiff has shown no error, and remand is not required.

**IT IS THEREFORE ORDERED** that that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision here.

Dated July 17, 2023, at Kansas City, Kansas.


        s/ John W. Lungstrum  
        **John W. Lungstrum**
        **United States District Judge**